UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No.: 19-cv-81316-MATTHEWMAN

PARTNERS BIOMEDICAL SOLUTIONS, LLC,
a Florida limited liability company, *et al.*,

     Plaintiffs,

vs.

EUGENE SALTSMAN, *et al.*,

     Defendants.

_____/

FILED BY____KJZ____D.C.

**Jan 29, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING IN PART AND DENYING IN PART
## MOVANTS' EXPEDITED MOTION FOR SANCTIONS [DE 217]

**THIS CAUSE** is before the Court upon the Expedited Motion for Sanctions and for Expedited Evidentiary Hearing by Plaintiffs, Partners Biomedical Solutions, LLC, and MAC 15, LLC, and Counter/Third Party Defendants, Gulf Coast Biomedical Services, LLC, and Robert Burke (collectively, "Movants") [DE 217]. The Motion is fully briefed. *See* DEs 240, 241, 244. On December 14, 2020, the Court held a limited evidentiary hearing via Zoom video teleconference on the issue of how, why, and under what circumstances Steven Friedman accessed or reviewed Dr. Robert Burke's AOL and Gmail emails. Additionally, the Court has reviewed *in camera* the documents submitted by Movants. *See* DEs 245, 256.

## I.      BACKGROUND

In Movants' Expedited Motion for Sanctions [DE 217], they allege that Steven Friedman intercepted and accessed Dr. Robert Burke's emails and then provided them to the law firm of Fowler White and to the Saltsman Defendants prior to and after this lawsuit commenced.

1

According to Movants, the Stipulated Protective Order Providing Confidentiality and Governing the Production and Exchange of Information (the "Confidentiality Order") [DE 134] entered by the Court on July 30, 2020, has been violated. [DE 217, p. 15]. Movants assert that the Saltsman Defendants and Friedman cannot unlearn what they learned through the privileged emails that were improperly accessed, so this Court should strike their claims. *Id.* at pp. 18-20. Movants also allege that Fowler White failed to satisfy its legal and ethical obligations upon obtaining access to privileged communications. *Id.* at pp. 22-27. They further assert that spoliation of electronically stored information ("ESI") warrants sanctions. *Id.* at pp. 27-28. Movants seek as appropriate sanctions the dismissal of the counterclaims and third-party claims, an award of reasonable attorney's fees and costs, and disqualification of the Fowler White attorneys. *Id.* at p. 31.

The Saltsman Defendants argue in response that the only possible basis for sanctions here is under the Court's inherent powers. [DE 240, p. 4]. They next maintain that there is no evidence of bad faith on the part of Mr. Friedman or the Saltsman Defendants and that there was no unfair advantage in this case. *Id.* at pp. 5-7. The Saltsman Defendants assert that Fowler White did satisfy its legal and ethical obligations upon obtaining the confidential ESI and that the ESI was not disclosed inadvertently. *Id.* at p. 10.

Steven Friedman argues in response that his sole focus, and the sole focus of SEZ Holding Corp. in this case, was to protect and assert their arbitration rights. [DE 241, p. 2]. Thus, the confidential emails had no bearing on their conduct in this case, and they could have received no unfair advantage. *Id.* Mr. Friedman argues that Movants have improperly, and without any legal support, requested that this Court sanction Mr. Friedman and SEZ Holding Corp., by ignoring the

2

parties' agreement to arbitrate. *Id.* He further argues that the unavailable thumb drive and laptop are not material and do not constitute spoliation. *Id.* at pp. 4-5.

In reply, Movants contend that, just because Mr. Friedman attempted to avoid reviewing or transferring privileged ESI, this did not absolve defense counsel of the independent duty to disclose the improper access in light of the ethical duties of counsel, the Federal Rules of Civil Procedure, and the Stipulated Confidentiality Order. [DE 244, p. 4]. Movants argue that, in addition to the Court's inherent powers, the Court can impose sanctions for defense counsel's and Defendants' violation of Rule 26(a); Rule 26(e)(1)(A); Rule 37(a)(4); Professional Rules of Conduct 4-1.2(d), 4-8.4(a), 4-8.4(c), 4-8.4(d), 4-1.6(b), 4-1.16, 4-3.3(a)(2), and 4-4.4(b); and Sections 8.1, 8.2, and 9.e of the Confidentiality Order. *Id.* at p. 5. According to Movants, the attempted sequestration of confidential documents by both Mr. Friedman and Fowler White was insufficient. *Id.* at pp. 7-8. They maintain that the Court must presume that, since the Defendants read the emails, Movants are prejudiced. *Id.* at pp. 8-9.

## II.   **EVIDENTIARY HEARING**

On December 14, 2020, the Court held a limited evidentiary hearing. Dr. Robert Burke and Steven Friedman testified. The Court also admitted into evidence Plaintiffs' Exhibit 1, 2, 3, and 5. *See* DEs 217-1, 255. Finally, the Court took judicial notice of Dr. Burke's affidavit previously filed on the docket at Docket Entry 217-2. The relevant testimony is summarized below.

### Dr. Robert Burke

Dr. Robert D. Burke testified under oath that he is 65 years old and a neuro-radiologist. He is also a managing member of MAC 15, LLC, which is, in turn, a managing member of Plaintiff Partners Biomedical. In 2017, when Steven Friedman was a business broker for Reichel Realty,

he presented Dr. Burke with an opportunity to invest in or purchase Gulf Coast Biomedical LLC. Dr. Burke initially passed on the deal. In late June 2018, a business broker contacted Dr. Burke and told him about another business deal with Gulf Coast. At that point, Mr. Friedman had left Reichel Realty and was working with Louis Weltman to buy Gulf Coast. Mr. Friedman and Mr. Weltman had already formed Partners Biomedical and had drafted a letter of intent to put under contract Gulf Coast, but they needed investors/investments. The closing date for the purchase of Gulf Coast[1] was October 19, 2018. At the time of closing, Mr. Friedman, through SEZ Holding Corp., became a 15% equity owner of Partners Biomedical. Mr. Weltman, Gene Saltsman, Evan Saltsman, and Alfatwo Holdings, LLC, also became shareholders. After the business deal, Partners Biomedical did not initially have an office. The company used a temporary office loaned to them by a business broker for a few weeks or months.

Dr. Burke has only ever had one AOL account (r******@aol.com). It was active in 2018. In 2018, Dr. Burke considered it his patient-centric email account and used it for his medical practice, including transcription notes, encrypted reports, and correspondence with other doctors and patients. He considered the account confidential because the emails sent and received from the account implicated HIPAA laws. Dr. Burke periodically changed the password for this AOL account.

In 2018, Dr. Burke was migrating slowly to a Gmail account (r********@gmail.com). In early to mid-December of 2018, a real estate broker emailed a lease for Partners Biomedical's new office to Dr. Burke's AOL email address. The real estate broker needed Dr. Burke to sign copies of the lease, but Dr. Burke was unable to print it at home. He went to Partners Biomedical's

---

[1] Gulf Coast was a wholly owned subsidiary of Partners Biomedical at that time.

temporary office to print the lease, but the secretary was not there. Since the secretary was not in the office, and neither Dr. Burke nor Mr. Friedman, who was working in the office that day, knew the login credentials for the company computer, Dr. Burke asked Mr. Friedman if he could use Mr. Friedman's laptop to download and print the lease. Dr. Burke logged into his AOL account himself on Mr. Friedman's laptop. He did not tell Mr. Friedman his password or display it. Dr. Burke did not intend to give Mr. Friedman access to his account and did not authorize Mr. Friedman to retain access to his AOL account. Dr. Burke does not remember logging out of his AOL account. He never used Mr. Friedman's computer again.

Dr. Burke does not recall ever logging into his Gmail account on Mr. Friedman's laptop. He never gave Mr. Friedman access to his Gmail account or authorized Mr. Friedman to use it. Dr. Burke keeps his Gmail credentials confidential and changes his password periodically.

On December 27, 2018, at 10:10 a.m., Mr. Friedman emailed Dr. Burke at his Gmail address, in part, to notify him that he had access to Dr. Burke's AOL account because the log-in information had remained on Mr. Friedman's computer. Mr. Friedman explained in the email correspondence that he took Dr. Burke's privacy very seriously, that Dr. Burke had given him access to his entire AOL account, and that Dr. Burke should change his password. Dr. Burke is not sure how long he waited to change his password after receiving the email, but he was out of the country and at sea when he received the email. He never responded to Mr. Friedman's email.

Mr. Friedman never advised Dr. Burke that he had access to Dr. Burke's Gmail account. The documents from Movants' privilege log came from the Gmail account, not the AOL account. However, Dr. Burke never gave Mr. Friedman access or authorization for the Gmail account.

Mr. Friedman's involvement in daily operations with Partners Biomedical ended in early

February 2019; however, he is still a 15% owner. Dr. Burke did not want Mr. Friedman involved in the day to day operations of the business any longer. His tipping point was when the business account was over-drawn and employee checks did not clear. In the spring of 2019, Dr. Burke considered naming Mr. Friedman and the Saltsman Defendants in a lawsuit. A bankruptcy plan was also discussed, and an adversarial proceedings complaint was circulated by email. Some of the documents that Mr. Friedman downloaded from Dr. Burke's emails dealt with these lawsuits, exchanges of drafts, and attorney invoices.

Every email pertaining to Partners Biomedical and Gulf Coast was and is on Dr. Burke's Gmail account. Dr. Burke learned about Mr. Friedman's access to his Gmail account for the first time at Mr. Friedman's November 2020 deposition.

<u>Steven Friedman</u>

Steven Friedman testified under oath that he has never hacked into anyone's emails. In fact, with regard to a Gmail account, the user has to set up certain security verifications to add the Gmail account to a new device. In December 2018, Dr. Burke came into Partners Biomedical's temporary office. It was later in the day, and Mr. Friedman was about to leave. Dr. Burke said he had received an email with a lease attached and needed to print it. The assistant had already left for the day, and no one knew the access code to her company computer. Dr. Burke said he needed to use Mr. Friedman's computer to access his email. They discussed having Dr. Burke email the lease to Mr. Friedman, but that option was not feasible for some reason. Mr. Friedman felt uncomfortable letting Dr. Burke use his laptop because there was confidential information on the computer. However, Mr. Friedman did ultimately allow Dr. Burke to use his laptop.

Dr. Burke seemingly looked in his Gmail account, could not find the email he was looking

6

for, and then stated out loud that maybe the emailed lease was actually in his AOL account. Dr. Burke used Mr. Friedman's laptop for a maximum of 20-30 minutes. After Dr. Burke found the lease in his AOL account, he printed it and signed it.

After Mr. Friedman sent the December 27, 2018 email correspondence to Dr. Burke advising Dr. Burke of Mr. Friedman's access to Dr. Burke's AOL account, Dr. Burke never responded. Mr. Friedman did not yet know when he sent the December 27, 2018 email that he also had access to Dr. Burke's Gmail account. After Mr. Friedman sent the email on December 27, 2018, he never again had access to Dr. Burke's AOL account. This is partially because, to access the AOL account, he had to be very proactive.

The information from Dr. Burke's Gmail account popped up on Mr. Friedman's Google Chrome browser a week to ten days after he sent the December 27, 2018 email. Dr. Burke's Gmail account had become Mr. Friedman's browser's default account, and the credentials auto populated every time Mr. Friedman turned on the computer. Mr. Friedman knew that Dr. Burke did medical evaluations and had privileged emails; however, Mr. Friedman did not know how to remove Dr. Burke's Gmail account, nor did he even try to do so. Mr. Friedman is not sure why he failed to notify Dr. Burke about his access to Dr. Burke's Gmail account.

In December 2018, Mr. Friedman was the CFO of Partners Biomedical. Dr. Burke was either the CEO or the chairman, as well as a managing member. In February 2019, Mr. Friedman ceased being CFO of the company. Weeks or months after he left the company, Louis Weltman and Dr. Burke alleged that Mr. Friedman had created accounting issues. Mr. Friedman had voided some transactions in Quickbooks that pertained to his deferred compensation because the transactions were irrelevant. Mr. Weltman and Dr. Burke thought Mr. Friedman was taking money

out of the business, but later investigation showed this was not true. Additionally, Dr. Burke was upset that the Partners Biomedical account had been over-drawn and that there were insufficient payroll funds; however, this problem was caused because Dr. Burke transferred money from the operating company into the holding company without Mr. Friedman's knowledge.

Mr. Friedman observed emails on Dr. Burke's Gmail account that showed that Mr. Friedman was being colluded against. He reviewed the Gmail account for additional emails demonstrating collusion against him, mostly looking at the subject lines. Mr. Friedman was concerned that Dr. Burke and others would attempt to use bankruptcy laws to eliminate Mr. Friedman's and the Saltsmans' interests in the business.

In April or May 2019, Mr. Friedman spoke to Eric Rosen, Esq., of Fowler White about his access to Dr. Burke's Gmail account (he no longer had access to Dr. Burke's AOL account). This was before Mr. Rosen represented the Saltsman Defendants in this case. Mr. Friedman explained that the Gmail account contained relevant, nonprivileged emails. He wanted Mr. Rosen to represent the potential creditors in any potential bankruptcy proceeding. Mr. Rosen and Mr. Friedman had worked together on a bankruptcy matter over 10 years ago. Mr. Friedman was concerned in 2019 for some employees, some creditors, and the Saltsmans based on emails he had seen.

In October or November 2019, Eric Rosen called Mr. Friedman and asked him to provide the relevant, nonprivileged documents from Dr. Burke's Gmail account because he was concerned Dr. Burke would withhold documents during the discovery process. Mr. Rosen told Mr. Friedman that, if he did not provide the documents, Mr. Rosen would have to subpoena him.

Mr. Friedman twice went to Fowler White to download documents for Mr. Rosen. The first

8

time was in the middle of November 2019. At that time, Mr. Friedman had already been served with the Complaint in this case and was already represented by Mr. Ellison. When he went to the law office, Mr. Friedman was given a thumb drive by Fowler White. He searched Dr. Burke's Gmail account for emails that had terms such as "Partners Biomedical" and "Gulf Coast" on his computer and downloaded those that did not appear to contain privileged information to his own thumb drive. He then copied everything that was on his own thumb drive to Fowler White's thumb drive. He later either erased or discarded his own thumb drive.

About four or five weeks later, in December 2019 or January 2020, Mr. Friedman again went to Fowler White's offices after he saw a particular bank statement in Dr. Burke's Gmail account. He downloaded that email and possibly other emails directly onto Fowler White's thumb drive. Mr. Friedman tried not to download any privileged emails either time. He later found out he did so by accident.

Mr. Friedman had access to Dr. Burke's Gmail account from mid-December 2018 through January 2020. However, he did not know that he had access to the Gmail account until January 2019. He checked the account more often after he noticed emails about a potential bankruptcy proceeding. He checked the account every day or every few days during that time period—over 100 times in total. In January 2020, Mr. Friedman's personal laptop crashed, and the hard drive died. The computer became useless, and he lost access to Dr. Burke's email accounts. Mr. Friedman's computer was discarded in August 2020—after he was served with this lawsuit. No one advised him to preserve the computer as evidence in this case.

Mr. Friedman knows he did not have authorization to conduct the Gmail email searches. However, he did not rely on a single document from any of Dr. Burke's emails in trying to obtain

9

his arbitration rights.

### III.   RELEVANT CHRONOLOGY

On September 25, 2019, the initial Complaint [DE 1] in this case was filed.

According to the testimony of Mr. Friedman at the evidentiary hearing, he brought emails and documents obtained from Dr. Burke's Gmail account to Fowler White for the first time in mid-November 2019, and then brought emails and documents to Fowler White in December 2019 or January 2020 for the second time.

On May 26, 2020, Mr. Friedman, SEZ Holding Corp., and Plaintiffs were ordered to go to arbitration, and the case was stayed as to Mr. Friedman and SEZ Holding Corp. [DE 113].

Then, on June 11, 2020, the Saltsman Defendants, via Fowler White, produced a large volume of documents in response to Plaintiff Partners Biomedical's discovery requests. However, the documents were produced without native metadata. These documents included those obtained by Mr. Friedman from Dr. Burke's Gmail account which had previously been provided to Fowler White by Mr. Friedman.

On July 30, 2020, the parties entered into their Stipulated Confidentiality Order [DE 134].

On September 29 and 30, 2020, Movants assertedly learned of the alleged ESI misconduct at the depositions of Defendants Eugene Saltsman and Alfatwo Holdings, LLC.

On October 9, 2020, Movants filed an Ex Parte Motion for Temporary Restraining Order and for Further Relief [DE 154]. This was their first attempt to obtain relief on this issue.

On October 20-21, 2020, the Saltsman Defendants, via Fowler White, re-produced the June 11, 2020 documents, but this time with native metadata.

On November 6, 2020, the documents described in the Confidential Log were produced by

Fowler White pursuant to Court Order.

On <u>November 13, 2020</u>, Movants conducted the deposition of Steven Friedman.

Finally, on <u>November 17, 2020</u>, the pending Motion for Sanctions was filed by Movants.

## IV.    COURT'S FACTUAL FINDINGS

In entering this Order and making its factual findings, the Court has made credibility determinations after taking the sworn testimony of Dr. Burke and Mr. Friedman. Certain factual findings are stated in this section, and others are stated elsewhere in this Order.

The Court finds Mr. Friedman's testimony that Dr. Burke accessed both his Gmail and his AOL email accounts on Mr. Friedman's personal laptop in December 2018 to be credible. This testimony is also the only credible and reasonable explanation for how Mr. Friedman obtained access to Dr. Burke's Gmail account. It is clear that Dr. Burke was at least negligent in leaving his two email accounts open and/or logged into on Mr. Friedman's personal computer. However, just because Dr. Burke was negligent in this regard did not give Mr. Friedman the right to continuously search Dr. Burke's Gmail account. In other words, Mr. Friedman took advantage of Dr. Burke's negligence and should not have done so.

It is also undisputed that Mr. Friedman emailed Dr. Burke on December 27, 2018, to alert Dr. Burke to the fact that he had access to Dr. Burke's AOL account, and to advise him to change his password. At that time, Mr. Friedman was not aware that he had access to Dr. Burke's Gmail account on Mr. Friedman's laptop computer. Again, Dr. Burke was, at a minimum, negligent in not taking prompt steps to change his AOL password. Dr. Burke did not respond to Mr. Friedman's December 27, 2018 email and took no immediate steps to address the security issues raised by that email.

As to Dr. Burke's Gmail account, Mr. Friedman failed to alert Dr. Burke about his access to that account at any time after it "popped up" on Mr. Friedman's laptop computer at some point in January 2019. Mr. Friedman clearly did not do so because he was concerned that he would be sued and wanted to keep abreast of what Dr. Burke was doing and was going to do. It is also clear that Mr. Friedman was a party in this lawsuit when he was searching the Gmail emails of Dr. Burke and providing them to Fowler White. However, on May 26, 2020, the case was stayed against him and SEZ Holding Corp. pursuant to the Court's Order requiring arbitration. [DE 113].

This case does not involve a true case of email "hacking" as asserted and argued by Movants. This is not a case where Mr. Friedman intentionally and deviously intruded onto Dr. Burke's computer system to gain illegal access to Dr. Burke's email accounts. If such were the case, the Court would be imposing more serious sanctions. Rather, this is a situation where Dr. Burke negligently left his email credentials on Mr. Friedman's laptop computer and then negligently took no proactive action to protect his email accounts even after being warned by Mr. Friedman of his access to Dr. Burke's AOL account. Although Mr. Friedman then improperly took advantage of Dr. Burke's negligence by accessing the Gmail emails, such conduct does not truly constitute computer "hacking" as that term is commonly understood.

## V.   ANALYSIS

At the evidentiary show cause hearing, Movants requested that the Saltsman Defendants' counterclaims be stricken as a sanction for their alleged misconduct in this case. They also requested that the Court revoke the stay order as to Mr. Friedman. Finally, they requested that the Court impose an award of fees and costs associated with this proceeding against Mr. Friedman, the Saltsman Defendants, and attorney Eric Rosen and his firm, Fowler White.

## A. <u>Applicable Rules Pertaining to Potential Sanctions</u>

Movants claim that the Court can impose sanctions for the conduct of Eric Rosen, Esq., and his firm, Fowler White, Mr. Friedman, and the Saltsman Defendants pursuant to Rule 26(a); Rule 26(e)(1)(A); Rule 37(a)(4); Professional Rules of Conduct 4-1.2(d), 4-8.4(a), 4-8.4(c), 4-8.4(d), 4-1.6(b), 4-1.16, 4-3.3(a)(2), and 4-4.4(b); and Sections 8.1, 8.2, and 9.e of the Confidentiality Order [DE 134]. The Court will address each of the bases for sanctions.

### (i)  <u>Federal Rules of Civil Procedure 26 and 37</u>

First, with regard to Rule 26(a) and Rule 26(e), the Court finds no violation. Rule 26(a) requires, in relevant part, that "a party must, without awaiting a discovery request, provide to the other parties . . . a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(ii). Rule 26(e) requires, in relevant part, that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Movants argue that the "Rule 26(a) initial disclosure requirements required accurate initial disclosures that should have included the improperly accessed ESI from both Tranches ## 1 and 2." [DE 217, p. 26]. Movants further argue that, "if the non-moving parties and their counsel

13

suggest they only learned later of the privileged nature of the ESI, then Rule 26(e)(1)(A) required the Fowler White attorneys and their clients to disclose upon learning of the privileged ESI and immediately advise the Moving Parties that Defendants' Rule 26 disclosures (which did not disclose the improperly accessed ESI) were not accurate and complete." *Id.* at pp. 26-27. Here, however, there is no evidence in this case that the Saltsman Defendants had or have any plan to use the documents or ESI that their counsel obtained from Mr. Freidman to support their claims or defenses. *See* DE 240, p. 10. ("However if the Court in an abundance of caution enters an order not allowing the use of any of the Confidential ESI, the Defendants are completely comfortable with such an order, since the only potential use this material has to the Defendants is to impeach the credibility of the Moving Parties, and there is plenty of other evidence to use for that."). Therefore, they were not required to include the documents in their initial disclosures or to supplement their initial disclosures with the documents. Furthermore, while the Saltsman Defendants were not obligated to disclose the documents at issue in their initial disclosures, they did properly produce them and/or describe them in their privilege log. Thus, the Saltsman Defendants did not violate Rule 26.

The Court similarly finds that there has been no violation of Rule 37(a)(4), which deals with an evasive or incomplete disclosure, answer, or response. This is because it seems clear that, on June 11, 2020, the Saltsman Defendants, through their counsel at Fowler White, initially produced to Movants the documents obtained by Mr. Friedman within a large volume of documents produced at that time, or, if the Saltsman Defendant did not initially produce them, they referenced and included them in a descriptive privilege log provided to Movants and then subsequently produced the emails to Movants. There is no evidence that the Saltsman Defendants

14

provided an evasive or incomplete disclosure, answer, or response. In making such production, it seems clear that neither the Saltsman Defendants nor their counsel at Fowler White were trying to hide the fact that they had obtained possession of certain of Dr. Burke's Gmail emails and attachments. If the Saltsman Defendants or their counsel were acting in bad faith or attempting to be evasive, they would have hidden all references to the Gmail emails and not produced or referenced those documents in their June 11, 2020 discovery production and response. All of the Gmail emails at issue in the pending motion have been produced by the Saltsman Defendants to Movants. None were lost, destroyed or hidden. Accordingly, the Court sees no violation.

(ii) <u>Florida Bar Rules of Professional Conduct</u>

Next, the Court has reviewed the Professional Rules of Conduct. The Court finds no violation of Florida Bar Rules 4-1.2(d), 4-1.6(b), 4-1.16, or 4-3.3(a)(2) because there is no evidence of criminal or fraudulent conduct. Fla. Bar R. Regulating Fla. Bar 4-1.2(d), 4-1.6(b), 4-1.16, 4-3.3(a)(2).

Rule 4-4.4(b) states that "[a] lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent must promptly notify the sender." R. Regulating Fla. Bar 4-4.4(b). This Rule is inapplicable because this is not a situation where Dr. Burke or his counsel inadvertently sent documents to Fowler White.

Rule 4-8.4 is also inapplicable because there is no evidence that Fowler White violated or attempted to violate the Rules of Professional Conduct or knowingly assisted or induced another to do so, or did so through the acts of another; engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; or engaged in conduct in connection with the practice of law that is

15

prejudicial to the administration of justice. R. Regulating Fla. Bar 4-8.4(a), (c), (d). Again, as discussed above, had the Saltsman Defendants or their counsel hidden the documents and not produced or referenced them in their discovery responses, the situation would be much different. But that is not what happened here, and there is no bad faith or fraud or dishonesty on the part of the Saltsman Defendants or their counsel.

In sum, the Court finds that there is no evidence that Fowler White or attorney Eric Rosen violated any of the Professional Rules of Conduct relied on by Movants.

(iii)     Section 9(e) of the Confidentiality Order

The Court has reviewed the Confidentiality Order [DE 134]. Section 9(e) explains that "[n]othing in this order overrides or excuses an attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced." *Id.* at p. 10. However, since the Court has found no ethical violation here, section 9(e) is inapplicable.

(iv)     Sections 8.1 and 8.2 of the Confidentiality Order and Federal Rule of Civil Procedure 37

Sections 8.1 [2] and 8.2 [3] of the Confidentiality Order [DE 134] cover unauthorized disclosure of protected material. The language of Section 8.1 is very broad. Under 8.1, if either

---

[2] "If a Receiving Party learns that, by inadvertence or otherwise, it or a Party, Non-party or entity known to it, has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or entity to execute the 'Acknowledgment and Agreement to Be Bound' (Exhibit 1)." [DE 134, p. 8].

[3] "No Party, nor that Party's counsel or experts or any other person retained by the Party to assist in the preparation of this action, shall under any circumstances sell, share, advertise, use for gain, or publicize the contents of Protected Documents. Any such violation of this Order shall subject the Party and the individual who can be shown to have done so with respect to any of the Protected Documents or contents thereof, may subject such Party or individual(s), including counsel or staff to counsel, to monetary sanctions and sanctions for contempt of court." [DE 134, p. 8].

Mr. Friedman, the Saltsman Defendants, Fowler White, or Mr. Rosen received Protected Material "by inadvertence or otherwise," they had certain duties and obligations specified therein. Further, under Section 8.2, the Protected Material cannot be shared by parties, counsel, or experts.

The Confidentiality Order was docketed on July 30, 2020 [DE 134]—after the alleged ESI misconduct. Thus, Federal Rule of Civil Procedure 37(b)(2)(A) only applies if Mr. Friedman, the Saltsman Defendants, and Fowler White failed to obey the Confidentiality Order after it was docketed on July 30, 2020. Fed. R. Civ. P. 37.

Mr. Friedman was no longer an active party in this case and had already been sent to arbitration when the Confidentiality Order was entered. Any alleged actions which pre-date July 30, 2020, perpetrated by Mr. Friedman cannot possibly be violative of the Confidentiality Order as it was not in effect prior to that date.

Finally, the Saltsman Defendants, through counsel, produced certain documents obtained by Mr. Friedman from Dr. Burke's Gmail account in June 2020. It has been established that, when they produced the documents, they failed to explicitly explain where they had obtained the documents. However, they could not have possibly violated the Confidentiality Order through any of their conduct in June 2020 since the Confidentiality Order was not entered until July 30, 2020.

Pursuant to Rule 37, the Court may impose the following sanctions: directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; striking pleadings in whole or in part; staying further proceedings until the order is obeyed; dismissing the action or proceeding in whole or in part; or treating as contempt of court the failure

to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A)(i-vii).

District courts possess wide discretion over the discovery process and when discovery sanctions are appropriate; however, "a district court may only impose a severe sanction, such as dismissal of an action, when it has been established that the offending party's failure to comply with its discovery obligations is due to the party's willfulness, bad faith, or fault." *Kendall Lakes Towers Condo Assoc., Inc. v. Pacific Ins.*, No. 10–24310–CIV, 2011 WL 6190160, at *4 (S.D. Fla. Dec. 2, 2011). Dismissal is not appropriate when the party has failed to comply with its discovery obligations due to negligence, misunderstanding, or the inability to comply. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1539, 1542 (11th Cir. 1993). The justifications for dismissal as a sanction are to punish the offending party, to deter similar conduct in future cases by other parties, to compel discovery, and to compensate the court and moving party for the added expenses of the discovery abuses. *Wouters v. Martin Cty., Florida*, 9 F.3d 924, 933 (11th Cir. 1993).

The severe sanctions permitted by Rule 37(b) are usually only imposed by district courts upon a finding "(1) that the party's failure to comply with the order was willful or a result of bad faith, (2) the party seeking sanctions was prejudiced by the violation, and (3) a lesser sanction would fail to adequately punish and be inadequate to ensure compliance with court orders." *Pacific Ins.*, 2011 WL 6190160, at *5; *Taylor v. Bradshaw et al.*, No. 11-80911-CIV-Marra/Matthewman, 2015 WL 11256306, at *3 (S.D. Fla. Apr. 8, 2015), *report and recommendation adopted as modified,* No. 11-80911-CIV, 2015 WL 11254712 (S.D. Fla. May 11, 2015), aff'd sub nom. *Taylor v. Bradshaw et al.*, No. 15-15027, 2018 WL 3414344 (11th Cir. 2018).

**B.  Sanctions Pursuant to the Court's Inherent Power**

The Court can also impose sanctions pursuant to the Court's inherent power. The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations and quotation marks omitted). Courts have long been recognized as having certain implied powers that are "necessary to the exercise of all others." *Id.* at 43 (citing *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). A court's "inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* at 46.

A federal court possesses the inherent power to impose sanctions when there has been willful misconduct. *Chambers*, 501 U.S. at 43. To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith. *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x 930, 931 (11th Cir. 2006); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002); *see also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (noting that "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith") (citation and quotations marks omitted).

"Dismissal of a case with prejudice is considered 'an extreme sanction that may be

properly imposed <u>only</u> when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" *Warner v. Tinder, Inc.*, 675 F. App'x 945, 946 (11th Cir. 2017) (quoting *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1338 (11th Cir. 2005)). "Findings satisfying both prongs of [this] standard are essential before dismissal with prejudice is appropriate." *Id.* (quoting *Betty K Agencies, Ltd.*, 432 F.3d at 1339). "In contrast, dismissal without prejudice generally does not constitute an abuse of discretion, even for a single, relatively minor procedural violation, because the affected party may re-file his or her action." *Smith v. Bruster*, 424 F. App'x 912, 914 (11th Cir. 2011).

### C.   Whether Sanctions Should Be Imposed Against Mr. Friedman, the Saltsman Defendants, Fowler White and/or Any Counsel

With the above principles and findings in mind, the Court must determine whether sanctions should be imposed, and if so, the nature and bases of the sanctions that should be imposed. The Court has carefully reviewed the cases relied on by Movants: *Castellano v. Winthrop,* 27 So.3d 134 (Fla. 5th DCA 2010); *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.,* No. 1:04-CV-1015-JOF, 2007 WL 2479290 (N.D. Ga. Aug. 28, 2007), aff'd, 561 F.3d 1298 (11th Cir. 2009); *Allapattah Servs., Inc. v. Exxon Corp.,* 373 F. Supp. 2d 1344 (S.D. Fla. 2005); *Smith v. Armour Pharm. Co.,* 838 F. Supp. 1573 (S.D. Fla. 1993); *Jackson v. Microsoft Corp.,* 211 F.R.D. 423 (W.D. Wash. 2002), aff'd, 78 Fed. Appx. 588 (9th Cir. 2003); *Lipin v. Bender*, 644 N.E.2d 1300, 1304 (N.Y. 1994); *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 400 (D.N.J. 1995); and *Leor Exploration and Production, LLC v. Aguiar,* Case 0:09-cv-60136-PAS, a case from the Southern District of Florida. These cases are factually distinguishable from the case at hand because it appears that Mr. Friedman did not initially illegally obtain access to Dr. Burke's

20

email accounts. That is, Mr. Friedman did not hack into Dr. Burke's computer, server, or email accounts in the first instance.

Rather, Mr. Friedman obtained access to the emails because Dr. Burke negligently left his two email accounts logged-in on Mr. Friedman's laptop, and Mr. Friedman then took advantage of that negligent conduct. Furthermore, Mr. Friedman testified under oath as to how he obtained the emails and detailed the process by which he provided them to Fowler White and Mr. Rosen. The Court finds credible Mr. Friedman's testimony as to how he obtained access to Dr. Burke's AOL and Gmail accounts, that he tried to avoid providing any privileged emails or attachments to Fowler White and Mr. Rosen, and that he did not intend to provide the confidential Gmail emails of Dr. Burke to Fowler White and Mr. Rosen. Moreover, Movants seem to acknowledge that Mr. Friedman attempted to not look at or transfer privileged ESI to Fowler White. [DE 244, p. 4]. And, Movants seem to further acknowledge that Mr. Friedman and Fowler White attempted to sequester the confidential documents, but that such attempts were insufficient. [DE 244, pp. 7-8].

The Court finds that the present dispute concerns a situation that should never have occurred for a number of reasons. First, Dr. Burke should not have left his AOL and Gmail accounts open and available on Mr. Friedman's laptop computer. This negligence helped to cause this problem to erupt in this litigation.

Second, Dr. Burke should have immediately changed the password to his AOL account once he received the email from Mr. Friedman on December 27, 2018, in which Mr. Friedman advised he had access to the AOL account. He did not do so.

Third, Dr. Burke should have proactively changed his Gmail password at that time as well since it is clear that he had signed onto his Gmail account while on Mr. Friedman's computer.

Again, Dr. Burke did not do so. It is quite curious and surprising that Dr. Burke did not promptly respond to Mr. Friedman's December 27, 2018 email in which Mr. Friedman advised Dr. Burke to change his AOL account password because that account was appearing on Mr. Friedman's laptop computer. At that point, the logical response from Dr. Burke would have been to immediately change his AOL (and Gmail) account passwords and demand that Mr. Friedman return and destroy any emails or documents he may have copied or downloaded. However, Dr. Burke remained silent and did nothing. This further negligence has greatly contributed to this protracted dispute.

Fourth, once Mr. Friedman noticed that Dr. Burke's AOL and Gmail accounts were open on his laptop computer, he should have deleted both. He failed to do so.

Fifth, Mr. Friedman should have advised Dr. Burke of his subsequent access to the Gmail account just as he had previously done with the AOL account. However again, he failed to do so.

Sixth, Mr. Friedman should not have continued to access Dr. Burke's Gmail account continually as this litigation progressed. Such conduct by Mr. Friedman was clearly improper.

Seventh, when Mr. Friedman downloaded the Gmail emails and attachments of Dr. Burke to Fowler White's thumb drive, he should have been more careful to avoid producing confidential or Protected Material. In not doing so, he was also negligent.

Eighth, the better practice would have been for Fowler White, Mr. Rosen, and the Saltsman Defendants to have more explicitly notified Movants that they had the documents from Dr. Burke's Gmail account rather than producing or referencing them during discovery within a large volume of documents and assuming Movants would notice that the documents at issue. However, it appears that the Saltsman Defendants and their counsel did ultimately produce all Gmail emails to

Movants on more than one occasion.

After consideration of all the facts and law, as well as the failings committed by all parties in this case which have clearly impacted this matter, the Court now considers the sanctions sought by the Movants.

(i)    <u>Disqualification</u>

First, the Court finds that disqualification is not appropriate in this case. As stated above, the Court does not find that Fowler White or Eric Rosen violated any Bar Rules or any Federal Rules of Civil Procedure. Moreover, disqualification is an extreme sanction which is not justified in this case. *See Ranger Constr. Indus., Inc. v. Allied World Nat'l Assurance Co.*, No. 17-81226-CIV, 2019 WL 436555, at *8 (S.D. Fla. Feb. 4, 2019). Additionally, this complex and fact-intensive case has been pending since September 25, 2019 and has reached the final stages of discovery. Requiring the Saltsman Defendants to retain new counsel and get them up to speed this late in the litigation would be unduly expensive and burdensome. Disqualification of Plaintiff's counsel would severely prejudice the Saltsman Defendants and is wholly unnecessary under the facts of this case. Based on the unique facts of this case, the Court does not believe that the Saltsman Defendants have obtained or will obtain an unfair advantage or that Movants will be unfairly prejudiced. The documents obtained from Dr. Burke's Gmail account will not be used in this litigation by the Saltsman Defendants for any purpose, as discussed further below. Moreover, Dr. Burke contributed to the creation of this problem in the first place by accessing his email accounts on Mr. Friedman's computer and negligently failing to log out or subsequently change his passwords. Thus, for a number of reasons, disqualification shall not be ordered.

23

(ii)     Rescinding Arbitration Order

Second, the Court finds that it would be improper to rescind the order to arbitrate as to Mr. Friedman and SEZ Holding Corp. It is clear that neither Mr. Friedman nor SEZ Holding Corp. relied on the emails and documents they viewed from Dr. Burke's Gmail account in asserting their contractual right to arbitration. It would be unfair and illogical to penalize them for their conduct by invalidating a contractual provision to arbitrate. Although this Court does not condone Mr. Friedman's conduct in accessing Dr. Burke's emails, Mr. Friedman's conduct in this case does not dispense with a valid contractual obligation to arbitrate. Despite the fact that Mr. Friedman acted improperly in reviewing and copying Dr. Burke's Gmail emails, he is still entitled to arbitrate this dispute. Moreover, Movants have not cited to any law that supports their request. The case against Mr. Friedman and SEZ Holding Corp. is currently stayed, and the parties have been directed to arbitration. The facts and argument asserted by Movants does not change the fact that arbitration is required as to Mr. Friedman and SEZ Holding Corp. Thus, the Court will not rescind the order requiring arbitration, and the case shall remain stayed as to Mr. Friedman and SEZ Holding Corp.

(iii)     Striking Claims/Award of Attorney's Fees

Third, the Court finds that the facts of this case do not support striking the counterclaims and third-party claims. Such a sanction is extreme and must be utilized with caution.[4] Mr. Friedman, Fowler White, defense counsel, and the Saltsman Defendants did not act in bad faith. Although Mr. Friedman acted improperly in continuing to access Dr. Burke's Gmail emails, the Court does not find that he acted in bad faith. Further, Mr. Friedman's improper conduct provided him no benefit and caused no real prejudice to Movants, especially in light of the fact that he

---

[4] Movants' counsel correctly conceded at the hearing that the entry of default judgments and striking of answers is inappropriate given the facts of this case.

cannot rely on any of the emails at issue for any purpose and because the dispute involving him must be resolved in arbitration. The Court also makes no finding of sufficiently willful misconduct by any of the Saltsman Defendants that would support such an extreme sanction as striking claims. As stated above, the cases relied on by Movants to support their position are factually distinguishable. Lesser sanctions here are sufficient and appropriate.

As to Movants' requests for an award of attorney's fees and costs, the Court has struggled with that issue. After careful consideration of all the facts and applicable law, the Court finds that such an award of fees and costs is not appropriate or justified against any person or entity under the unique facts of this case. As noted above, all of the parties in this case deserve some of the blame for the eruption of this dispute. There was a parade of errors and negligent conduct, starting with Dr. Burke, continuing with Mr. Friedman, and proceeding onward. Therefore, the Court will not award attorney's fees and costs to any party or entity. Such an award of attorney's fees and costs would be unjust in this case.

(iv)    <u>Spoliation Sanctions</u>

Fourth, as to Movants' claim of spoliation, while Mr. Friedman's laptop and Mr. Friedman's thumb drive are unavailable, all of the documents and emails from Dr. Burke's Gmail account that were stored on Mr. Friedman's devices were transferred to the Fowler White thumb drive, which still exists (and has been produced to Movants). Thus, pursuant to Federal Rule of Civil Procedure 37(e), there is no spoliation.

Rule 37(e), which discusses the failure to preserve ESI, states in relevant part that the Court can take certain actions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to

25

preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016) ("Rule 37(e) precludes any sanctions or curative measures if the ESI can be restored or replaced through additional discovery."). Here, the ESI at issue was replaced as it all existed on the Fowler White thumb drive. It was therefore never "lost" as contemplated by Rule 37(e). Furthermore, it seems that Mr. Friedman's laptop was not intentionally destroyed, but simply malfunctioned. Spoliation sanctions are therefore not appropriate.

(v)   <u>Precluding Use of AOL or Gmail Emails and Documents</u>

Fifth, the Court orders that the Saltsman Defendants (and Mr. Friedman if he ever becomes an active defendant in this case in the future) are precluded from relying in any manner whatsoever on any AOL or Gmail emails or documents obtained by Mr. Friedman from Dr. Burke in this litigation. Mr. Friedman is also precluded from using or relying upon any such emails in arbitration. These are the only appropriate and necessary sanctions in this case. The Court understands Movants argument that the "bell cannot be unrung" and documents that have been seen cannot be unseen. However, precluding the Saltsman Defendants and Mr. Friedman from further relying on these documents will remedy any possible prejudice to Movants. Additionally, any further sanctions would serve to unnecessarily delay this case.

**VI.   <u>CONCLUSION</u>**

In light of the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. Movants' Expedited Motion for Sanctions [DE 217] is **GRANTED IN PART AND DENIED IN PART**.

26

2.  The Saltsman Defendants (and Mr. Friedman if he ever becomes an active defendant in this case in the future) are precluded from relying on any emails or documents obtained by Mr. Friedman from Dr. Burke's email accounts in this litigation. The emails and attached documents obtained from Dr. Burke's AOL and Gmail email accounts cannot be introduced by the Saltsman Defendants in any capacity whatsoever, including, but not limited to, in summary judgment papers or at trial. Mr. Friedman is also precluded from relying upon or using any such emails in the arbitration proceeding.

3.  The Motion is DENIED in all other respects.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of January, 2021

WILLIAM MATTHEWMAN
United States Magistrate Judge

27